OPINION
{¶ 1} Appellant, Eric Karl Moe, appeals the decision of the Butler County Court of Common Pleas, Domestic Relations Division, to modify a divorce decree pursuant to Civ.R. 60(B). We affirm in part, and reverse in part.
 {¶ 2} Appellant ("husband") and appellee, Lisa Jayne Moe ("wife"), were married on June 16, 2000. On March 26, 2001, wife filed a complaint for legal separation. Husband filed an answer, but did not counterclaim. The record on appeal does not reveal how or when, but at some point after the initial pleadings were filed, the parties agreed to convert the proceedings to a divorce action.
 {¶ 3} A contested divorce hearing was scheduled for November 7, 2001. On the morning of the hearing, some final negotiations between the parties and their attorneys took place off the record and outside the courtroom. At the conclusion of the prehearing talks, an apparent full and final agreement was reached. The parties then proceeded to the hearing where selected portions of the agreement, seemingly finalized during the hallway discussion, were read into the record.
 {¶ 4} During the hearing, the trial court asked husband and wife whether they agreed to all of the terms of the divorce settlement, to which both parties responded: "Yes, I do." The court then ordered counsel for husband to draft a divorce decree reflecting the agreement reached.
 {¶ 5} Following the November 7 hearing, wife indicated to her attorney that she was dissatisfied with the proposed decree. According to wife, the decree did not accurately reflect her understanding of the terms agreed upon during the hearing. Specifically, she was dissatisfied with the agreement because husband was not required to pay child support arrearage; he was only ordered to pay a monthly child support of $1,045; and the specifics of his visitation rights were unfairly worded in his favor. The attorney-client relationship between wife and her counsel broke down, and wife's counsel was granted permission to withdraw from the case.
 {¶ 6} On January 22, 2002, wife, proceeding pro se and in an apparent attempt to halt the proceedings before a final judgment decree was entered, filed a motion to dismiss her divorce complaint. The motion was summarily granted without a hearing.
 {¶ 7} On February 20, 2002, husband filed a motion to reinstate wife's divorce complaint, and on March 27, 2002, the motion to reinstate was granted over wife's objections. On June 4, 2002, final judgment was entered, along with a divorce decree that did not include the signature of wife.
 {¶ 8} On May 23, 2003, wife, no longer proceeding pro se, filed a Civ.R. 60(B) motion to set aside or modify the divorce decree. The motion essentially alleged that there was no meeting of the minds with respect to the settlement agreement read into the record at the hearing on November 7, 2001. Wife alleged in the motion that she was under extreme emotional distress at the time of the hearing, and that her attorney's negligent representation caused her to mistakenly enter into the agreement.
 {¶ 9} A hearing on the motion was held before a magistrate on October 1, 2003, and in a written decision, the motion to modify the divorce decree was granted. The magistrate presiding over the hearing found that the divorce was legally valid, but that the terms of the divorce decree governing visitation rights and child support were confusing and contained substantial error. Accordingly, the magistrate ordered the parties to prepare to litigate those issues. The trial court affirmed the magistrate's decision on February 19, 2004, and this appeal followed.
 {¶ 10} On appeal, husband raises the following single assignment of error:
 {¶ 11} "The trial court abused it [sic] discretion in granting civil rule 60(b) relief from a divorce decree judgment where no grounds for relief were established."
 {¶ 12} Civ.R. 60(B) provides: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment."
 {¶ 13} In order to prevail on a Civ.R. 60(B) motion, a party must show (1) a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the five enumerated grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time. In re Whitman, 81 Ohio St.3d 239, 242, 1998-Ohio-466;Douglas v. Boykin (1997), 121 Ohio App.3d 140, 145.
 {¶ 14} On review of a trial court's decision to grant or deny relief under Civ.R. 60(B), an appellate court will not reverse absent an abuse of discretion. Goode v. Goode (1993), 89 Ohio App.3d 405, 409. An abuse of discretion does not exist where the trial court's decision is supported by competent, credible evidence. Brown v. Akron Beacon JournalPublishing Co. (1991), 81 Ohio App.3d 135, 143.
 {¶ 15} Turning to the case at bar, we begin by noting that alleging a lack of mutual assent to the terms of a settlement agreement in divorce proceedings satisfies the meritorious claim or defense requirement of a Civ.R. 60(B) motion. See, e.g., Robinson v. Robinson (Oct. 21, 2002), Stark App. No 2002 CA 00009. We also note that neither party disputes that wife's motion was timely made. Thus, the first and third requirements for granting relief under Civ.R. 60(B) were met in this case.
 {¶ 16} With respect to the second requirement, the trial court's written decision does not state which of the five enumerated grounds it relied upon in reaching its decision. In relevant part, however, the decision states the following:
 {¶ 17} "The basis of Mrs. Moe's request to set aside the decree is that at the time she entered into the agreement on November 7, 2002 [sic], she was under extreme emotional duress and she relied on incorrect advise [sic] from counsel as to what would be the child support ordered in this case. Mrs. Moe maintains that child support should have been ordered at $1,413 per month, not the $1,045 per month support. Further, Mrs. Moe requests the decree be set aside as to the visitation orders that were made as the orders as written in the parties' divorce decree do not reflect the contents of the trial transcript as it was read into the record on November 7, 2001. * * *.
 {¶ 18} "In review of the transcript, it is clear there was much confusion; in fact, the divorce decree does not exactly reflect the language used at the time of the divorce agreement on November 7, 2001. * * * There was * * * discussion on the record that the $1,045.00 figure was a deviation from the child support guideline amount. However, it is also clear in the trial transcript that there was no approval of the deviation by [the court], the deviation was to be based on subsequent events concerning [husband's] visitation. Counsel agreed that following the completion of the three visits, that there would be a deviation of the support based on the geographic distance and the cost of travel to [husband] to go to Nebraska. Thus, the $1,045.00 figure contained in the decree is, in fact, not the correct child support amount."
 {¶ 19} We have carefully reviewed the record and agree, in part, with the trial court's findings. The transcript of the November 7, 2001 settlement hearing reveals substantial confusion with respect to husband's visitation rights. Furthermore, with respect to the visitation schedule, the divorce decree does not accurately reflect the agreement seemingly reached by the parties before the court on November 7, 2001.
 {¶ 20} We find nothing in the record, however, to support the trial court's finding that the $1,045 figure agreed upon was surrounded by confusion, and based upon a deviation.
 {¶ 21} At the hearing, the following dialogue concerning the settlement agreement and the amount of child support took place between the court, the parties, and counsel:
 {¶ 22} "Court: And has the agreement been reduced to writing or do you need to read it into the record?
 {¶ 23} "Counsel for husband: We would probably need to read selected provisions.
 {¶ 24} "Court: Mr. and Mrs. Moe I want you to listen very carefully, be sure you understand it, be sure that nothing has been omitted because once you accept it on the record you will be bound by it.
 {¶ 25} "* * *
 {¶ 26} "Counsel for husband: Child support, based upon husband's adjusted gross income of $120,000 per [sic] and wife's adjusted gross income of $15,000 an award of child support would be $1,045 per month. Your Honor, Mr. Moe is asking for a deviation in this case due to the expense husband will incur for transportation and lodging to spend time with the child as he lives in Virginia * * *.
 {¶ 27} "Court: It is going to begin as guidelines, after three visits it will. . . .
 {¶ 28} "Counsel for husband: Yes, assuming you'll approve the deviation, after three visits by my client.
 {¶ 29} "Court: Alright. But you understand that we do not have the mechanism to do that at this time. You have to file guideline visitation, excuse me, guideline support. After he's had his three visits, file the modification with the new.
 {¶ 30} "Counsel for Wife: Your Honor, I'd be happy to submit an Agreed Entry * * * to that effect.
 {¶ 31} "* * *
 {¶ 32} "Court: Okay. Anything else? Alright. Mrs. Moe do you understand this agreement?
 {¶ 33} "Wife: Yes, I do
 {¶ 34} "Court: Do you agree to all of the terms?
 {¶ 35} "Wife: Yes, I do.
 {¶ 36} "Court: Has anything been left out?
 {¶ 37} "Wife: Yes
 {¶ 38} "Court: You mean, no, nothing has been left out?
 {¶ 39} "Wife: Nothing has been left out.
 {¶ 40} "Court: Mr. Moe do you understand the agreement?
 {¶ 41} "Husband: Yes, I do.
 {¶ 42} "Court: Do you agree to the terms?
 {¶ 43} "Husband: Yes, I do.
 {¶ 44} "Court: Has anything been left out?
 {¶ 45} "Husband: No, ma'am.
 {¶ 46} "* * *
 {¶ 47} "Court: I will grant this divorce on the grounds on [sic] incompatibility and approve the agreement that you've reached with other [sic]. It isn't appropriate for me to give you a deviation at this time. When you get your Agreed Entry, come to me and I'll do the deviation.
 {¶ 48} "* * *."
 {¶ 49} The foregoing excerpt from the November 7 hearing reveals that husband and wife both agreed to the $1,045 figure. It is also clear that both parties were present when the trial court stated that the $1,045 was according to support guidelines, and that no deviations would be granted at that time.
 {¶ 50} We recognize that the divorce decree does contain a provision that seems to indicate a deviation has been granted for husband's transportation expenses. However, a subsequent provision clarifies this apparent discrepancy. The clarifying provision states:
 {¶ 51} "Pursuant to the parties agreement, once Husband has three (3) visits with the child, Husband shall be entitled to a deviation in child support as agreed by the parties. Once Husband has fulfilled these visits, the parties shall execute a separate entry to effectuate this provision."
 {¶ 52} We also find no basis to support the trial court's finding that $1,045 was not the correct support amount. The negotiated settlement agreement, the transcript of the hearing on November 7, 2001, and the divorce decree all state that the salaries of $120,000 for husband and $15,000 for wife were used to calculate the $1,045 amount. Applying these salaries and no deviations to the Revised Code's support guidelines yields a child support award of $1,045 per month.
 {¶ 53} It appears that the magistrate, in reviewing the transcript of the hearing on November 7, 2001, mistakenly concluded that the support order of $1,045 was a downward deviation. It is clear from the transcript of that hearing, however, that the trial court did not grant a downward deviation at that time. A deviation was to be granted in the future, once husband satisfied specific conditions.
 {¶ 54} Wife's real complaint in this case seems to be with the performance of her counsel. However, as husband notes, and as the trial court noted in its decision to grant husband's motion to reinstate the divorce complaint: settlement agreements read into the record in the presence of parties who are represented by counsel are enforceable even if unsigned, and even if counsel for one of the parties was negligent. Compare Thomas v. Thomas (1982), 5 Ohio App.3d 94, with Argo Plastic Products Co. v. Cleveland (1984), 15 Ohio St.3d 389. See, also, Brown,81 Ohio App.3d at 140-141 (holding each party is deemed bound by the acts of his lawyeragent and is considered to have notice of all facts that can be charged upon the attorney).
 {¶ 55} In sum, the record contains competent, credible evidence to support the trial court's order to set aside the visitation schedule. However, the record does not contain competent, credible evidence to support the trial court's decision to set aside the agreed upon child support amount of $1,045. Consequently, we find the trial court abused its discretion in setting aside the child support order, and appellant's assignment of error is, in part, sustained.
 {¶ 56} Accordingly, the decision of the trial court is affirmed in part and reversed in part, and we remand for further proceedings consistent with this opinion.
Powell and Valen, JJ., concur.